UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------
AARON SABATER,
                            Plaintiff,

                  -v-

MONTEFIORE MEDICAL CENTER
and LOCAL UNION 1199, SEIU,
                            Defendants.
---------------------------------------------------------------

17-CV-7135 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Plaintiff Aaron Sabater brings this discrimination and duty-of-fair-representation action against Defendants Montefiore Medical Center ("Montefiore") and 1199SEIU United Healthcare Workers East[1] ("1199"). Sabater alleges that Montefiore, his employer, discriminated against him on the basis of race and retaliated against him when he complained of discrimination, in violation of 42 U.S.C. § 1981 ("Section 1981") and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq*. (*See* Dkt. No. 1 ("Compl.").) He alleges that Montefiore and 1199, his union, violated the Labor Management Relations Act of 1947 ("LMRA") Sec. 301, 29 U.S.C. § 185, and New York state law. (*See id.*) Both defendants have moved for summary judgment. For the reasons that follow, 1199's motion for summary judgment is granted, and Montefiore's motion for partial summary judgment is granted.

**I.    Background**

      Sabater was hired at Montefiore as a temporary employee in May 2011 as a Senior Accounting Clerk. (Dkt. No. 51 ("Montefiore SOF") ¶ 5.) In August 2011, he was transferred to

---

      [1] Defendant 1199SEIU United Healthcare Workers East was incorrectly called "Local Union 1199, SEIU" when this action was filed. (Dkt. No. 44 at 1.)

1

a Billing Representative position. (Montefiore SOF ¶ 6.) In 2013, a permanent position became available, and paperwork was submitted to transfer Sabater into that position and change his status from temporary to permanent. (Montefiore SOF ¶¶ 18, 20.) However, around March 9, 2015, Sabater appeared on a list of temporary employees. (Montefiore SOF ¶ 21.) While the paperwork was submitted to change Sabater's status in 2013, it had never been processed. (Montefiore SOF ¶¶ 22–23.) On April 1, 2015, the request to transfer Sabater to a permanent position was resubmitted. (Montefiore SOF ¶ 24.) As a result, management in his department was under the impression that Sabater's status had been successfully changed. (Montefiore SOF ¶ 25.) Sabater disputes the notion that this impression was erroneous and asserts that his status was successfully changed in 2015. (Dkt. No. 67 ("Montefiore CSOF") ¶¶ 24–25.)

In late 2014, Sabater complained about his supervisor, Alex Monard. (Montefiore SOF ¶ 37.) While there is some factual dispute about the content of those complaints, Sabater asserts that he complained of discrimination and abuse. (Montefiore CSOF ¶ 37.) On August 8, 2016, Sabater called the Compliance Hotline complaining of harassment by his supervisors. (Montefiore CSOF ¶¶ 46–49.) When he ultimately discussed the complaint with Human Resources, Sabater alleges, he complained about discrimination as well as harassment. (Montefiore CSOF ¶¶ 50–56.) Sabater claims that he was reassigned to the Scanning Room following these complaints, but Montefiore disputes this fact. (Montefiore CSOF ¶ 36.)

Montefiore is a member of the League of Voluntary Hospitals and Homes of New York, which is party to a Collective Bargaining Agreement ("CBA") with 1199. (Dkt. No. 45 ("1199 SOF") ¶ 5.) Pursuant to the CBA, 1199 filed a class grievance around Fall 2010 because 1199 believed that the League of Voluntary Hospitals and Homes of New York was violating the CBA with respect to the overuse of non-permanent employees. (1199 SOF ¶¶ 6–7.) After six years,

2

on November 2, 2016, a stipulation was executed to settle the class grievance. (1199 SOF ¶ 28.)

The stipulation provided in relevant part that:

> (a) Montefiore would provide 1199 with a monthly list of temporary employees and information concerning the nature of their temporary assignments; (b) Montefiore would, in its sole discretion, extend employment offers to current temporary employees who had worked beyond the contractual limit; [and] (c) any current employee who was not extended an offer of employment would be terminated within sixty (60) days of the execution of the Stipulation.

(1199 SOF ¶ 29.) Following the execution of the stipulation, Montefiore declared a hiring freeze. (1199 SOF ¶ 34.) 1199 learned about the hiring freeze when Montefiore announced it to its employees. (1199 SOF ¶¶ 35–36.)

Sabater's name appeared on a list of temporary employees who were employed beyond the contractual time limit following the execution of the stipulation. (Montefiore SOF ¶ 74.) Because he was classified as a temporary employee, he needed to be terminated pursuant to the stipulation if he could not be placed in a permanent position before January 1, 2017. (Montefiore SOF ¶ 75.) While there were efforts made to place Sabater in a permanent position, due to the hiring freeze those efforts failed. (Montefiore SOF ¶¶ 77–81.) Sabater continues to deny that he was a temporary employee during this period. (Montefiore CSOF ¶¶ 77–81.) Eventually, pursuant to the stipulation, Montefiore terminated all thirty-seven of the temporary employees who had worked beyond the contractual limit, including Sabater. (1199 SOF ¶¶ 37–38.)

Following his termination, Sabater sought 1199's assistance. (1199 SOF ¶¶ 39–40.) In January 2017, his Organizer, Keith Johnson, said that he would look into Sabater's termination. (1199 SOF ¶ 43.) Sabater spoke on the phone with Johnson on ten occasions about the situation. (1199 SOF ¶ 44.) Johnson informed Sabater that he was "working on it" and referred him to Johnson's supervisors. (1199 SOF ¶¶ 45–47.) Sabater spoke to Union Vice President Gladys

Wrenick on two or three occasions, and she informed him that 1199 was attempting to assist him with his termination. (1199 SOF ¶¶ 48–51.)

1199's initial assessment was that Sabater was wrongly classified as a temporary employee. (1199 SOF ¶ 53.) While Johnson and Wrenick told Sabater that they were trying to get him back to work, they never told him that 1199 was grieving or arbitrating his termination. (1199 SOF ¶¶ 54–59.) 1199 asserts that Montefiore insisted to it that Sabater was a temporary employee. (1199 SOF ¶ 62.) However, Sabater disputes this and points to a document indicating that Montefiore acknowledged his temporary status was erroneous. (*See* Dkt. No. 63 ("1199 CSOF") ¶ 62.) 1199 subsequently conducted an investigation into Sabater's claims and came to the conclusion that it could not independently verify his status as a temporary or permanent employee. (1199 SOF ¶¶ 63–64.) As a result, 1199 decided against filing a formal grievance on Sabater's behalf. (1199 SOF ¶ 65.)

However, 1199 did contact the arbitrator who retained jurisdiction over the Class Grievance expressing its concerns about Montefiore's actions under the stipulation, including the hiring freeze and subsequent termination of temporary employees. (1199 SOF ¶¶ 67–69.) 1199 provided the arbitrator with a list of individuals it believed were negatively impacted by the stipulation, which included Sabater. (1199 SOF ¶ 70.) In May 2017, Montefiore and 1199 agreed to discuss getting the temporary workers rehired. (1199 SOF ¶ 71.) Indeed, Johnson called Sabater on August 3, 2017 to confirm that he was still interested in returning to work at Montefiore. (1199 SOF ¶ 72.) Sabater initiated this action six weeks later, on September 19, 2017. (*See* Compl.)

## II. Legal Standard

Summary judgment under Rule 56 is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

4

56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

"On summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense." *Cohen Lans LLP v. Naseman*, No. 14 Civ. 4045, 2017 WL 477775, at *3 (S.D.N.Y. Feb. 3, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). "If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12 Civ. 5262, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014). The court views all "evidence in the light most favorable to the non-moving party," and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks omitted) (second quoting *Lunds, Inc. v. Chem. Bank*, 870 F.2d 840, 844 (2d Cir. 1989)).

## III.  Discussion

### A.  1199's Motion for Summary Judgment

1199 moves for summary judgment on Sabater's hybrid LMRA § 301 claim against it. To bring a hybrid LMRA § 301 claim, "[an] employee must allege both (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation in redressing her grievance against the employer." *Doyle v. United Airlines, Inc.*, 914 F. Supp. 2d 325, 338 (E.D.N.Y. 2012) (internal quotation marks omitted) (quoting *White v. White Rose Food*, 128 F.3d 110, 113 (2d Cir. 1997)). 1199 argues that it never breached its duty of fair representation, and thus Sabater's claim against it must fail.

5

A breach of a union's duty of fair representation must involve "conduct toward a member . . . [that] is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). And "[a]ny substantive examination of a union's performance . . . must be highly deferential, recognizing the wide latitude that [unions] need for the effective performance of their bargaining responsibilities. *Airline Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991). Sabater argues that 1199 acted arbitrarily when it failed to formally grieve his alleged misclassification as a temporary employee and subsequent termination, and in bad faith when it falsely led him to believe his case would be grieved. (*See* Dkt. No. 60 at 17–21.)

First, Sabater has failed to provide any evidence to suggest that 1199 acted arbitrarily when it declined to formally grieve his case. "A union's actions are 'arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational.'" *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (quoting *Air Line Pilots Ass'n-Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)). 1199's initial assessment of the case was that Sabater was miscoded as a temporary employee and should be reinstated. (*See* Dkt. No. 62-10 at 3–4.) Sabater argues that 1199 treated his complaint about his erroneous termination in an "arbitrary and perfunctory manner" when it decided that it could not independently verify his status as a permanent employee and declined to file a formal grievance. (Dkt. No. 60 at 21.)

1199 explains that when it began to investigate Sabater's claims, it determined that it had no documentary evidence to prove he was a permanent employee. (*See* Dkt. No. 46-3 at 69:13–72:16.) As a result, 1199 declined to file a grievance on behalf of Sabater. (*See* 1199 SOF ¶ 65.) While Sabater points to internal Montefiore emails demonstrating that he was considered a permanent employee (*see* Dkt. Nos. 62-8 to 62-9), he has not shown, or even asserted, that 1199

6

was privy to any of this information when it declined to grieve his case. This is critical, because 1199's actions can only be considered "arbitrary" based on the "factual and legal landscape" at the time it declined to file a grievance on Sabater's behalf. *See Vaughn*, 604 F.3d at 709 (quoting *O'Neill*, 499 U.S. at 67).

Sabater also points to a document that seems to suggest that Montefiore admitted to 1199 that there was an error in his status. (*See* Dkt. No. 62-10 ("Management admits there is an error in status but claims they must go through the formalities of laying off [Sabater] until his status is resolved.").) He suggests that this is evidence that 1199 did have a factual basis to pursue his grievance. (*See* 1199 CSOF ¶ 62.) The "wide range of reasonableness" standard allows unions to "make discretionary decisions and choices, even if those judgments are ultimately wrong." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45–46 (1998). Even if Sabater is correct that he was erroneously coded as a temporary employee, and 1199 made the incorrect judgment that it did not have enough information to file a grievance on his behalf, that decision alone is not legally sufficient to support a claim that 1199's actions were arbitrary.[2] This is especially true because 1199 did take steps to assist Sabater. 1199 alerted an arbitrator who already had jurisdiction over the class grievance that Sabater was among those negatively affected by how Montefiore chose to comply with the stipulation. (1199 SOF ¶¶ 67–70.) It is undisputed that

---

[2] Sabater also points to another union member, Vilma Caicedo, who had her status changed simply by way of contacting the Director of Payroll as evidence that 1199 acted arbitrarily or in bad faith. (*See* Dkt. No. 60 at 20; *see also* Dkt. No. 62-13.) However, Sabater has failed to show, or even assert, either that he was similarly situated to Caicedo in any way other than the fact that Montefiore failed to update her status to permanent, or that 1199 provided her any assistance in updating her status that was not afforded to him. (*See* Dkt. No. 60 at 20.) A single conclusory paragraph in Sabater's opposition accusing 1199 of acting arbitrarily or in bad faith cannot defeat 1199's motion for summary judgment on this ground. *See D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) ("The non-moving party may not rely on mere conclusory allegations or speculation.")

through that avenue, 1199 was attempting to secure relief for those who were terminated due to the stipulation, including Sabater. (1199 SOF ¶¶ 71–72.) As "long as the union acts in good faith, the courts cannot intercede on behalf of employees who may be prejudiced by rationally founded decisions which operate to their particular disadvantage." *Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43–44 (2d Cir. 1989) (citation omitted). Here, while Sabater may disagree with the actions that 1199 took on his behalf, those actions were not so irrational as to be considered arbitrary.[3]

Second, Sabater has failed to provide any evidence that 1199 acted in bad faith by misleading him into believing his case would be formally grieved. A "union acts in bad faith when it acts with an improper intent, purpose, or motive. Bad faith encompasses fraud, dishonesty, and other intentionally misleading conduct." *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998) (citation omitted). While Sabater asserts that 1199 led him to believe it would be filing a formal grievance on his behalf, he admits that he was never told by anyone he spoke to that his termination was being grieved or that it would go to arbitration. (*See* 1199 CSOF ¶¶ 54–59.) The only evidence Sabater offers that he was led to believe that his case would be grieved was that he told a union organizer that he wanted "to be made whole." (*See* 1199 CSOF ¶¶ 54–55; Dkt. No. 62-11.) It does not follow from the fact that he expressed his wishes to 1199 that the union agreed that it would in fact file a formal grievance. Thus, Sabater

---

[3] Sabater also gestures at a genuine dispute of fact regarding "[w]hether [1199] is using . . . Sabater's 'temporary status' as pretext for its failure to grieve the case." (Dkt. No. 60 at 15.) However, Sabater points to no evidence suggesting that 1199's failure to file a formal grievance was in any way pretextual. Because Sabater "may not rely on mere conclusory allegations or speculation," this allegation cannot defeat 1199's motion for summary judgment. *See D'Amico*, 132 F.3d at 149.

has failed to produce any evidence to suggest that 1199 did anything to intentionally mislead him into thinking that a formal grievance would be filed on his behalf.

Accordingly, based on the undisputed facts, 1199 did not breach its duty of fair representation and its motion for summary judgment is granted.[4]

### B. Montefiore's Motion for Partial Summary Judgment

Montefiore moves for summary judgment on Sabater's retaliation claims under Section 1981 and the NYCHRL, his breach of contract claims under New York law, and his hybrid claim under the LMRA.

#### 1. Retaliation Claims

"Retaliation clams under . . . [Section] 1981 are . . . analyzed pursuant to Title VII principles and the *McDonnell Douglas* burden-shifting evidentiary framework." *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015) (footnote omitted). To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that (1) he engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action. *Id.* at 315–16. If the plaintiff satisfies this burden, the defendant must articulate a legitimate, non-discriminatory reason for the alleged retaliatory action. *Joseph v. Marco Polo Network, Inc.*, No. 09 Civ. 1597, 2010 WL 4513298, at *16 (S.D.N.Y. Nov. 10, 2010). Once the defendant

---

[4] 1199 also moves for summary judgment on the basis that its settlement of the class grievance, failure to specifically notify Sabater about the stipulation, and failure to find Sabater a new job also did not breach its duty of fair representation. In his opposition, Sabater does not advance any of these theories, nor does he dispute the notion that these would not constitute a breach of 1199's duty of fair representation. (*See* Dkt. No. 60.) Accordingly, these arguments are deemed abandoned. *See Spaulding v. N.Y.C. Dep't of Educ.,* No. 12 Civ. 3041, 2015 WL 5560286, at *12 (E.D.N.Y. Sept. 21, 2015).

9

articulates such a reason, the burden shifts back to the plaintiff to demonstrate that the reasons articulated are a pretext for retaliation. *Id.*

Retaliation claims brought under the NYCHRL are subject to a lower standard. To prevail on a retaliation claim under the NYCHRL, a plaintiff must show (1) that he took an action opposing her employer's discrimination, and (2) that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action. *EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 838 (S.D.N.Y. 2013) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013)). "A defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives." *Mihalik*, 715 F.3d at 113 (citing *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39–40 & n.27 (App. Div. 1st Dep't 2009)).

First, Montefiore argues that to the extent Sabater was reassigned from his position on the posting team to the scanning room team,[5] that reassignment did not constitute an adverse employment action. (*See* Dkt. No. 50 at 4–5.) Montefiore points out that Sabater testified that the job in the scanning room was "easier," and his hours and pay did not change. (*See* Dkt. No. 57-1 at 252:7–14, 256:25–257:5.) While Sabater describes the role as a "demotion" in his opposition, he cites no evidence to support that characterization. (*See* Dkt. No. 64 at 16–19.)

---

[5] As an initial matter, there is a factual dispute as to whether this transfer occurred in the first instance. (*See* Montefiore CSOF ¶ 36.) For the purposes of this motion for summary judgment, the Court will assume *arguendo* that it occurred. Second, Montefiore argues that there is no evidence that Monard, the supervisor who allegedly transferred Sabater to the scanning room team, knew that Sabater had made a complaint. (Dkt. No. 50 at 4.) However, that is irrelevant. It is enough that *Montefiore* knew that Sabater had made a complaint for the purposes of the knowledge requirement. *See Alston v. N.Y.C. Transit Auth.*, 14 F. Supp. 2d 308, 311 (S.D.N.Y. 1998) (citing *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)) ("[P]laintiff need not show that individual decision-makers . . . knew that she had filed EEO and EEOC complaints.")

And a simple job transfer, without more, does not constitute an adverse employment action under either Section 1981 or the NYCHRL. *See, e.g.*, *Sollazzo v. Just Salad Rest.*, No. 15 Civ. 252, 2018 WL 1273661, at *8 (S.D.N.Y. Mar 5, 2018). Because Sabater has presented no evidence in the record that this transfer was materially adverse, Montefiore's motion for summary judgment on this ground is granted.

Second, Montefiore argues that any allegation that Monard threatened Sabater and his mother's jobs also do not constitute an adverse employment action. It is true that threats, without more, do not constitute adverse employment action. *See Tepperwien v. Entergy Nuclear Operations*, No. 07 Civ. 433, 2010 WL 8938797, at *6 (S.D.N.Y. Mar. 16, 2010). And because Sabater does not address this argument in his opposition to Montefiore's motion for summary judgment, it is considered abandoned. *See Spaulding*, 2015 WL 5560286, at *12. Accordingly, Montefiore's motion for summary judgment on this ground is granted.

Third, Montefiore argues that Sabater has not adequately shown the causal connection between his complaints and his termination. Montefiore argues that Sabater was terminated as a result of a Stipulation of Settlement entered into with 1199 after an arbitration concerning the employment of per diem, temporary, and agency workers beyond the time limit provided by the Collective Bargaining Agreement ("CBA"). (*See* Montefiore SOF ¶¶ 71, 81.) While efforts were made to place Sabater into a permanent position, there was a hiring freeze preventing any transfers. (*See* Montefiore SOF ¶¶ 75–80.) Because Sabater could not be transferred into a permanent position by January 1, 2017, by the terms of the Stipulation of Settlement, he had to be terminated. (Montefiore SOF ¶ 81.) In response, Sabater argues that his classification as a temporary employee must have been pretexual, because everyone in his department had the understanding that he was a permanent employee since at least 2013. (*See* Dkt. No. 66-4 at

11

42:7–18, 58:15–59:2). Sabater also asserts that any system error showing that he was a temporary employee rather than a permanent employee was fixed by 2015. (*See* Dkt. No. 66-8 at 3.)

However, Montefiore rightly points out that while this argument supports the notion that Sabater *should* have been coded as a permanent employee, the undisputed fact remains that he was coded as a temporary employee and was terminated as a result. (*See* Dkt. No. 68 at 5; *see also* Montefiore CSOF ¶¶ 74–81.) Even if Sabater was correctly coded as a permanent employee in 2015, it does not follow that he was not incorrectly coded as a temporary employee on January 1, 2017. Montefiore has provided evidence that he was indeed coded as a temporary employee at the time of his termination. (*See* Dkt. No. 54-1 at 2; Dkt. No. 69-2.) And Sabater has not pointed to any evidence suggesting that he was not actually coded, even if erroneously, as a temporary employee on the date of his termination on January 1, 2017.

Even assuming Plaintiff is correct that he was coded as permanent in 2015, the fact that sometime between April 1, 2015, and January 1, 2017, Sabater was erroneously re-coded as a temporary employee is not enough to show that his termination was "caused at least in part by discriminatory or retaliatory motives." *See Mihalik*, 715 F.3d at 113. Because Sabater has failed to point to any evidence that either his placement on the temporary employee list or his subsequent termination was driven even in part by retaliatory motives, Montefiore's motion for summary judgment on this ground is granted.

Accordingly, all of Sabater's Section 1981 and NYCHRL retaliation claims are dismissed.

### 2. Breach of Contract Claim

Montefiore also moves for summary judgment on Sabater's state-law breach of contract claims. "To state a breach of contract claim under New York law, a plaintiff must allege: (1) a

valid contract, (2) plaintiff's performance, (3) defendant's failure to perform, and (4) damages resulting from the breach." *MeehanCombs Glob. Credit Opportunities Funds, LP v. Caesar's Entm't Corp.*, 80 F. Supp. 3d 507, 514 (S.D.N.Y. 2015) (citing *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011)). Montefiore argues that Sabater has failed to produce any evidence of a contract or an employment agreement. Indeed, in his opposition Sabater only discusses a breach of the CBA rather than a private employment contract. (*See* Dkt. No. 64 at 22–23.) And Sabater has admitted that Montefiore does not have employment contracts with employees represented by 1199. (*See* Montefiore CSOF ¶ 15.)

Because Sabater seems to be claiming a breach of the CBA rather than an independent employment contract, that claim is preempted by the LMRA and any state-law claims must be dismissed. *See Arnold v. Beth Abraham Health Servs., Inc.*, No. 09 Civ. 6049, 2009 WL 5171736, at *5 (S.D.N.Y. Dec. 30, 2009). Accordingly, Montefiore's motion for summary judgment is granted on this ground, and Sabater's state-law breach of contract claim is dismissed.

### 3. LMRA § 301 Claim

Montefiore also moves for summary judgment on Sabater's hybrid claim under LMRA § 301. As previously discussed, to bring a hybrid LMRA § 301 claim, "[an] employee must allege both (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation in redressing her grievance against the employer." *Doyle*, 914 F. Supp. 2d at 338 (internal quotation marks and citation omitted). "Failure to establish that the union breached its duty of fair representation necessarily precludes the claim against the employer." *Pinkney v. Progressive Home Health Servs.*, 367 F. App'x 210 (2d Cir. 2010) (citing *Young v. U.S. Postal Serv.*, 907 F.2d 305, 307 (2d Cir. 1990)). For the reasons discussed in Section III.A above, Sabater has failed to show that 1199 breached its duty of fair

13

representation. Accordingly, Montefiore is granted summary judgment on this ground and Sabater's LMRA § 301 claim is dismissed.

**IV.     Conclusion**

For the foregoing reasons, Defendant 1199SEIU United Healthcare Workers East's motion for summary judgment is GRANTED. Defendant Montefiore Medical Center's motion for partial summary judgment is GRANTED.

Counsel for Plaintiff and Defendant Montefiore Medical Center shall appear for a telephonic status conference in the case on May 6, 2020, at 11:00 a.m. At the appointed time, counsel shall call (888) 557-8511, and use the access code 9300838.

The Clerk of Court is directed to close the motions at Docket Numbers 43 and 49, and to terminate Defendant 1199SEIU United Healthcare Workers East (incorrectly called Local Union 1199, SEIU) as a party to this case.

SO ORDERED.

Dated:  April 6, 2020
        New York, New York

_____
J. PAUL OETKEN
United States District Judge